JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:21-cv-05308-AB-GJS | Date: | September 14, 2021 |

Title: *Luis Licea v. RUGS.COM, LLC, et al.*

Present: The Honorable **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER **GRANTING** MOTION FOR REMAND [Dkt. No. 8]

Before the Court is Plaintiff Luis Licea's ("Plaintiff") Motion for Remand ("Motion," Dkt. No. 8). Defendant Rugs.com, LLC ("Defendant") filed an opposition and Plaintiff filed a reply. The Motion is **GRANTED**.

### I. BACKGROUND

Plaintiff, who is permanently blind, filed this action in Los Angeles County Superior Court, alleging that Defendant's website has accessibility barriers that deny him the full use and enjoyment of the website. *See* Compl. (Dkt. No. 1-1) ¶ 7. Plaintiff asserts one count for violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq*. Plaintiff seeks statutory damages, attorneys' fees, costs, and an injunction requiring Defendant to "take the steps necessary to make the Website readily accessible to and usable by visually-impaired individuals." *Id.* ¶ 26. Plaintiff also purports to limit the cost of injunctive relief to no more than $20,000, and the total recovery including statutory damages, attorneys' fees, costs, and the cost of injunctive relief to no more than $74,999. *See* Compl. Prayer.

Defendant removed the action on the grounds of diversity jurisdiction, arguing that Plaintiff's attempt to limit the damages to no more than $74,999 is of no effect because the cost of providing injunctive relief Plaintiff seeks is not subject to his control and will exceed 80,000. As a result, Defendant argues, the amount in controversy exceeds $75,000.

In the Motion, Plaintiff argues that Defendant has not established that the amount in controversy is satisfied because its estimate for remediation of the website is unreasonable and unsupported, and furthermore, no other amounts should be considered since none were referenced in the Notice of Removal. Plaintiff further provided a proposal from third-party vendor VaShaun Jones ("Jones Decl.," Dkt. No. 8-13) to remediate the website for $14,300. In Opposition, Defendant argues that the statutory damages and attorneys' fees Plaintiff seeks should be considered and provides amounts for them. Defendant also provides explanation from its CEO Johnny Nassri ("Nassri Decl.," Dkt. No. 16-2) as to the costs to comply with injunctive relief. In reply, Plaintiff argues that none of Defendant's arguments or evidence are plausible and that therefore Defendant has not met its burden.

## II. LOCAL RULE 7-3

The Court first addresses the parties' dispute about whether Plaintiff satisfied Local Rule 7-3's meet and confer requirement. There were 18 written communications between them regarding the Motion. This correspondence was attached multiple times to the filings and the Court unfortunately did review it. Defense counsel claims Plaintiff's counsel did not meet and confer in good faith because instead of talking on the phone to sincerely try to narrow the issues, he insisted on communicating via letters, a time-consuming and burdensome endeavor by which Plaintiff evaded engaging with Defendant. Plaintiff's counsel claims he preferred conferring in writing in order to avoid miscommunication.

Local Rule 7-3 does not require in person or even telephonic conferences, but it does say in person conferrals are "preferabl[e]." It therefore follows that conferring over the phone is generally preferable to conferring through letters alone. Plaintiff's counsel's rather combative letters in response to Defense counsel's initially cordial emails requesting a call reflect no willingness to engage with Defendant in a mutually convenient way. Plaintiff's concern about miscommunication is not unsolvable: counsel commonly confer over the phone then exchange confirming emails so there is no miscommunication. They can also

confer over the phone *and* continue conferring in writing. There are many ways to confer in a mutually convenient and productive way. Instead, Plaintiff's counsel insisted on his way alone, unwilling to schedule any call whatsoever with Defense counsel and demanding that any response be in writing. This is uncivil.

Yet, ultimately, the correspondence reflects meaningful consideration and exchange of legal argument including case law—matters better communicated in writing than over the phone. The Court cannot conclude that the parties *thoroughly* conferred because it will not squander more of its time studying their correspondence. The Court finds that compliance with Local Rule 7-3 was adequate, largely because Defense counsel acquiesced to Plaintiff's demands to confer in writing. This is not a credit to Plaintiff's counsel, who should have at least extended the courtesy of taking a phone call on the subject in lieu of or even in addition to correspondence. That small gesture would have likely averted this protracted dispute over compliance with Local Rule 7-3.

### III.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction and thus have subject matter jurisdiction only over matters authorized by the Constitution and Congress. *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986). "Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal," statutes conferring jurisdiction are "strictly construed and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (citations and quotations omitted).

There is a strong presumption that the Court is without jurisdiction until affirmatively proven otherwise. *See Fifty Assocs. v. Prudential Ins. Co. of America*, 446 F.2d 1187, 1190 (9th Cir. 1970). When an action is removed from state court, the removing party bears the burden of demonstrating that removal is proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Federal diversity jurisdiction exists when the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Pursuant to 28 U.S.C. § 1441, a defendant may remove an action from state court to federal court if the diversity and amount in controversy requirements are satisfied and if none of the defendants are citizens of the forum state.

The amount in controversy, for purposes of diversity jurisdiction, is the total "amount at stake in the underlying litigation." *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005). "[T]his includes any result of the litigation, excluding interests and costs, that 'entails a payment' by the defendant." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016). "Among other items, the amount in controversy includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018)

"The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566. And while "'a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' . . . '[e]vidence establishing the amount is required'" when "defendant's assertion of the amount in controversy is contested by plaintiffs." *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014)).

In determining the amount in controversy, courts first look to the allegations in the complaint. *Ibarra*, 775 F.3d at 1197. But "where it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled[,]" courts apply a preponderance of the evidence standard, which requires the defendant to provide evidence showing that it is more likely than not that the $75,000.00 amount in controversy is met. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)). In considering whether the removing defendant has satisfied its burden, the court "may consider facts in the removal petition" and "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (quoting *Allen v. R & H Oil & Gas. Co.*, 63 F.3d 1326, 1335–36 (5th Cir. 1995)).

### IV. DISCUSSION

The parties agree and the Court finds that they are completely diverse. The only dispute is whether Defendant has satisfied its burden to show by a preponderance of the evidence that the amount in controversy is satisfied. Both sides submitted evidence. Defendant has not met its burden.

There are three contributors to the amount in controversy in this case: the civil penalty, the cost of injunctive relief, and attorneys' fees. The Court will discuss each.

### I. Statutory Damages

The Unruh Act entitles a prevailing plaintiff to actual damages and statutory damages of no less than $4,000 per violation. *See* Cal. Civ. Code § 52(a). Plaintiff seeks only statutory damages. Defendant argues that Plaintiff could recover up to $12,000 in statutory damages because the Complaint appears to allege that he visited the website 3 times and therefore experienced a violation 3 times. But "the amount in controversy reflects the maximum recovery the plaintiff could *reasonably* recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (emphasis added). Here, it is not reasonable to conclude that Plaintiff would recover 3 penalties for visiting the website 3 times. Defendant has cited no case making such an award, and of all the Unruh Act claims that have been adjudicated by this Court, often by default judgment or summary judgment, the Court does not recall awarding more than a single statutory penalty even where there were arguably multiple violations. It is rare for a plaintiff to seek multiple penalties. Defendant has therefore not shown that the $12,000 would be a reasonable likely recovery for the Unruh Act violation here. The Court finds that the civil penalty reasonably puts $4,000 in issue.

### II. Injunctive Relief

The Court next considers the injunctive relief Plaintiff seeks. In the Ninth Circuit, the value of the injunction for purposes of determining the amount in controversy may be assessed from "either viewpoint," that is, the amount that either party can gain or lose from the case. *In re Ford Motor Co./Citibank (So. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001).

Plaintiff seeks an injunction "requiring Defendant to take the steps necessary to make [its website] readily accessible to and usable by visually-impaired individuals." Compl. Prayer ¶ 2. Plaintiff purports to "expressly limit[] the injunctive relief to require that Defendant expend no more [than] $20,000 as the cost of injunctive relief." *Id.* But Defendant responds that this limitation is illusory because Plaintiff has no control over the cost of complying with an injunction and therefore cannot limit it. Defendant states in the NOR that compliance would cost at least $80,000 per year. *See* NOR p. 3. With its opposition, Defendant filed a declaration from its CEO contending that the initial work to ensure compliance

would cost about $48,428.75, and that thereafter, it will cost about $80,437.50 *per month* (the monthly cost for 10 new in-house coders). *See* Nassri Decl. ¶¶11-14. Defendant claims that the work will be extensive because its website is massive: it has about 200,000 webpages, and uploads about 7,150 rugs to its website each month. *See* Nassri Decl. ¶¶ 3, 13. Plaintiff responds that its Complaint caps the cost of injunctive relief at $20,000. Plaintiff also filed an offer from a vendor to remediate the website for $14,300. *See* Jones Decl. And in reply, Plaintiff indicates that there is a plethora of automated services that can efficiently survey a website for inaccessibility.[1]

The Court is skeptical that a plaintiff can effectively limit the cost of injunctive relief with the kind of disclaimer asserted in the Complaint. *See Martinez v. CotN Wash, Inc.*, No. 220CV09327VAPAGRX, 2020 WL 6799076, at *2 (C.D. Cal. Nov. 18, 2020) ("Although a plaintiff may limit his *monetary* damages in the complaint, Courts in this district have ruled that a plaintiff cannot expressly limit the cost of *injunctive relief*, and this Court agrees.") (emphasis added). However, the Court need not resolve this question because Defendant's estimate (like its attorneys' fee estimate discussed below) is not reasonable. It is true that Defendant's estimate is detailed, but it is also extravagant. It appears that Defendant believes a manual review of each and every webpage is required. But at the same time, Defendant acknowledges using templates to create its webpages: templates should streamline bringing the website into compliance without having to manually review each and every page. Furthermore, the Complaint asserts only four types of communication barriers on the website (*see* Compl. ¶18), whereas Defendant's estimate assumes approximately 15 WCAG 2.1 guidelines are in issue. This indicates that Defendant's estimate covers matters beyond those asserted in the Complaint. The Court therefore does not find Defendant's estimate persuasive or reliable and therefore disregards it.

The Court is therefore left with Plaintiff's estimate of $14,300, which is less than the $20,000 cap their Complaint asserts. Without a more realistic counter-estimate than that provided by Plaintiff, the Court relies on the Complaint's indication that injunctive relief will cost no more than $20,000. This Court does not view this as a "cap," but instead it appears to be a reasonable upper limit of the costs of the injunction based on the Jones estimate.

---

[1] The Court overrules Defendant's objections to the evidence filed in reply. It was filed in response to matters raised by the opposition and is otherwise admissible.

### III. Attorneys' Fees

The Unruh Act also permits recovery of attorneys' fees. This amount must be considered as part of the amount in controversy. *See Fritsch*, 899 F.3d at 793. "[C]alculations [of attorney's fees] should be conservative estimates." *Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015) (Birotte, J.) (citing *Guglielmino*, 506 F.3d at 701). "The reasonableness of attorney's fees, when such fees are unascertainable on the face of the complaint, can be calculated by looking to other attorney's fees awards in similar cases." *Garcia v. ACE Cash Express, Inc.*, No. SACV 14–0285–DOC, 2014 WL 2468344, at *5 (C.D.Cal. May 30, 2014), at *5 (citing *Kroske v. U. S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)); *see also Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002) ("The amount of fees commonly incurred in similar litigation can usually be reasonably estimated based on experience.").

The amount put in controversy by statutory damages ($4,000) and injunctive relief ($20,000) together is $24,000. Therefore, to exceed the $75,000 jurisdictional threshold, Defendant must demonstrate that the attorneys' fees put more than $51,000 in issue. They do not. Defendant states that Plaintiff will incur no less than $67,750 in attorneys' fees, but this is not a reasonable estimate. Defendant asserts that "Plaintiff's counsel will spend no less than 271 attorney hours on this case," which at the rate of $250, works out to $67,750. *See* McKown Decl. ¶ 14. This 271 hours is a vast overestimate that includes 30 hours for written discovery (*id.* ¶ 6), 50 hours for electronic discovery (*id.* ¶ 7), 30 hours for depositions (*id.* ¶ 8), 25 hours for expert discovery and depositions (*id.* ¶ 9), 50 hours for pre-trial matters (*id.* ¶ 12), and 40 hours for a jury trial *(id.* ¶ 13), for example. Plaintiff's Complaint asserts a single Unruh Act claim based on a website. Although it is an extensive website, litigating this case will unlikely take this much time. Neither side has provided the Court with any example of attorneys' fees *actually* awarded in a similar case, but the Court is not persuaded that the amount could reasonably exceed $51,000 (*i.e.*, 204 hours at $250 an hour) as necessary to satisfy the jurisdictional minimum.

### IV. CONCLUSION

For the foregoing reasons, Defendant has not established by a preponderance of the evidence that the amount in controversy exceeds $75,000. Therefore, this Court lacks jurisdiction over the action, **GRANTS** the Motion for Remand, and **ORDERS** the Clerk of Court to remand this case back to the court from which it was removed.   **IT IS SO ORDERED**.